IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| JAMES KING, | CV-21-00004-BU-BMM |
| Plaintiff, | |
| vs. | ORDER |
| BRIAN GOOTKIN, ASSOC. WARDEN GODFREY, LT. POSTMA, GUY NEUBAUER, | |
| Defendants. | |

Plaintiff James King, a state prisoner proceeding without counsel, filed a Motion to Proceed in Forma Pauperis (Doc. 1) and a proposed Complaint (Doc. 2). He has also filed what he has captioned an Addendum seeking emergency preliminary injunction. (Doc. 5.) King's allegations generally arise under the Eighth Amendment and are related to a new scanning technology being employed at Montana State Prison ("MSP"), though he also asserts a 14th Amendment claim in the Addendum. The motion to proceed in forma pauperis will be granted. For the reasons explained below, his Complaint will be dismissed without prejudice, and to the extent his Addendum is a motion for preliminary injunction, it will be denied.

1

## I.  MOTION TO PROCEED IN FORMA PAUPERIS

King submitted the account statement as required by 28 U.S.C. § 1915(a). (Doc. 1.) The Court will grant the request to proceed in forma pauperis, but since King is a prisoner, he must still pay the statutory filing fee of $350.00.  28 U.S.C. § 1915(b)(1). The Court will waive the initial partial filing fee required under 28 U.S.C. § 1915(b)(1) because King submitted an account statement showing an inability to pay that fee. *See Bruce v. Samuels*, 577 U.S. 82, 84 (2016) ("the initial partial filing fee may not be exacted if the prisoner has no means to pay it, § 1915(b)(4)"). He may proceed with the case, but he must pay the full filing fee in installments and make monthly payments of 20% of the preceding month's income credited to his prison trust account. The percentage is set by statute and cannot be altered.  28 U.S.C. § 1915(b)(2). King must make these monthly filing-fee payments simultaneously with the payments required in any other cases he has filed. *Id.*

By separate order, the Court will direct the facility where King is currently incarcerated to forward payments from his account to the Clerk of Court each time the account balance exceeds $10.00, until he has paid the filing fee in full.  28 U.S.C. § 1915(b)(2).

## II.  SCREENING STANDARD

King is a prisoner proceeding in forma pauperis so the Court must review his

Complaint under 28 U.S.C. § 1915 and § 1915A. Sections 1915A(b) and 1915(e)(2)(B) require the Court to dismiss a complaint filed in forma pauperis and/or by a prisoner against a governmental defendant before it is served if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "A case is malicious if it was filed with the intention or desire to harm another." *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005). A complaint fails to state a claim upon which relief may be granted if a plaintiff fails to allege the "grounds" of his "entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted).

Rule 8 of the Federal Rules of Civil Procedure provides that a complaint "that states a claim for relief must contain . . . a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed.R.Civ.P. 8(a)(2). That is, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). A complaint's allegations must cross "the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680.

There is a two-step procedure to determine whether a complaint's allegations cross that line. *See Twombly*, 550 U.S. at 556; *Iqbal*, 556 U.S. 662.

3

First, the Court must identify "the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679, 680. Factual allegations are not entitled to the assumption of truth if they are "merely consistent with liability," or "amount to nothing more than a 'formulaic recitation of the elements' of a constitutional" claim. *Id.* at 679, 681. A complaint stops short of the line between probability and the possibility of relief where the facts pled are merely consistent with a defendant's liability. *Id.* at 678.

Second, the Court must determine whether the complaint states a "plausible" claim for relief. *Iqbal*, 556 U.S. at 679. A claim is "plausible" if the factual allegations, which are accepted as true, "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). If the factual allegations, which are accepted as true, "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id. citing* Fed. R. Civ. P. 8(a)(2).

"A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardu*, 551 U.S. 89, 94 (2007);

4

*cf.* Fed. Rule Civ. Proc. 8(e) ("Pleadings must be construed so as to do justice").

## III.  SCREENING ANALYSIS

King filed his Complaint (Doc. 2) on January 27, 2021. He filed his supplemental Addendum on April 1, 2021. (Doc. 5.) This latter document both elaborates and amends his earlier claims and appears to move for a preliminary injunction. (Doc. 5 at 10.) As far as elaboration and amendment go, the Court will construe this document as a supplement to his Complaint for the purpose of this screening.

King seeks injunctive relief against several defendants related to the installation of a new scanning machine at MSP. (Doc. 2 at 3 et seq.) King asserts that his claims arise under the 8th Amendment, the Health Insurance Portability and Accountability Act ("HIPAA"), and the 14th Amendment. He is concerned about how the images created by this machine might provide personal medical data that could be used against him somehow and will be retained and stored in some unknown manner. He also expresses concern about the radiation involved in these scans (though in his Addendum, this concern appears to wane). He asks the Court to order MSP to cease using the scanning machine until it is able to answer certain questions about data storage and use, and to update the Department of Corrections ("DOC") search policy. (Doc. 2-1 at 11.)

In addition, King asks the Court to order an investigation into MSP's use of various COVID-19 relief funds, believing that the purchase of the machine may have been an illegal use of the funds. (Doc. 2-1 at 10.) He is also concerned about purchases of additional x-ray machines, unnecessary trash containers, cameras, and vehicles, all of which he considers questionable purchases. (Doc. 5 at 5 - 6.)

King's Addendum raises allegations that MSP has generally mishandled its COVID-19 response and has delayed doing proper testing or vaccinating. (Doc. 5 at 7 -8.)

Finally, King alleges that a disciplinary hearing reviewing his actions regarding the scanner violated his constitutional rights. (Doc. 5 at 11.)

King has sued Defendants Gootkin, Godfrey, Postma, and Neubauer in their official capacities. (Doc. 2 at 3.) In his Addendum, he adds a defendant in her individual capacity, Carrie Walsted, and adds individual capacity claims against Postma and Neubauer.

A.  The Scanner

As an initial matter, HIPAA itself provides no private right of action.  *Webb v. Smart Document Sols., LLC*, 499 F.3d 1078, 1081 (9th Cir. 2007). If King's action were to proceed, it must be as a 42 U.S.C. § 1983 cause of action alleging violations of his constitutional rights related to searches and health care.

King sought an immediate injunction to prevent the use of the scanner. Despite his lack of legal training or access to resources, King makes some compelling arguments about the mismatch between current MSP search policy and the use of such a high-powered machine.  The Court takes judicial notice of the fact that King appears to have been transferred, however, to Dawson County Correctional Facility.[1] Because he is no longer subject to scans at MSP, King's request for an injunction regarding the scanner will be dismissed as moot. A prisoner's request for injunctive relief regarding prison conditions is usually moot after he has been transferred elsewhere. *See Nelson v. Heiss,* 271 F.3d 891, 897 (9th Cir.2001). That said, the claim will be dismissed without prejudice. Should King be returned to MSP, and he asserts renewed issues related to the scanner, this dismissal will not be a bar to a future suit.

B.  MSP Spending

As to King's request that the Court investigate the way MSP is spending its money, this issue is not justiciable in this form in this Court. Article III courts like this one are courts of limited jurisdiction. One of the limitations on the Court's authority is the doctrine of standing, i.e., the plaintiff is bringing a claim that relates to an injury he himself suffers (with limited exceptions).  "[T]he core

---

[1] This information was gleaned from the Department of Corrections' online inmate locator on May 19, 2021. King has not (yet) notified the Court of his change of address.

component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). If a plaintiff does not have standing to bring a suit, the Court cannot hear it. The standing doctrine "requires federal courts to satisfy themselves that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction," so that "there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (emphasis in original) (internal quotation marks and citations omitted).

To demonstrate Article III standing, a plaintiff must allege: (1) injury-in-fact that is concrete and particularized, as well as actual or imminent; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that the injury is redressable by a favorable ruling. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010) (citation omitted); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

In this instance, King has not alleged sufficient facts to establish standing for his claim regarding MSP's use of federal COVID-19 relief funding to purchase the scanner and other equipment. Theoretically, spending of federal funds might affect King as a taxpayer or citizen, but "taxpayer status, without more, does not suffice under Article III to demonstrate an injury in fact for purposes of such purely

8

prospective relief." *Cantrell v. City of Long Beach*, 241 F.3d 674, 684 (9th Cir. 2001). He has not claimed that the alleged misuse of COVID-19 relief money—which is speculative, at this point—for the scanner could have caused him a particularized injury. Simply put, King's concerns about MSP's spending is not a proper claim for this § 1983 suit for constitutional violations regarding use of the scanner for searches. This claim will be dismissed.

C. COVID-19 Response

Similar deficiencies regarding standing and injuries undermine King's COVID-19 response claims. Theoretically, King could allege medical care claims under the Eighth Amendment's requirement that prisoners be afforded a constitutionally sound level of health care. To prove a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, a plaintiff must show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). King believes he had COVID-19 in October 2020, but his request for a test went unheeded. (Doc. 2-1 at 10.) He does not, however, allege that he had or has a serious medical need. Instead, he appears to be more interested in whether MSP staff committed crimes and embezzlement related to COVID-19 relief funding (perhaps implying that the money that should have been used for tests went elsewhere.) (Doc. 2-1 at 11.) His

9

initial Complaint does not seek further action regarding COVID-19 response, nor does he allege a constitutional violation regarding his health care.

In his Addendum, King goes further and seeks an order of this Court requiring that MSP stop vaccinating prisoners, in order to preserve evidence related to prisoner antibodies. (Doc. 5 at 8 – 9.) It appears the antibody testing would reveal how many prisoners had the illness, and therefore, how poor MSP's response to it was. Nowhere does he allege, however, that he personally has suffered a constitutional injury because of how MSP was or is proceeding regarding COVID-19. He still appears only to establish that the response was poor. Nor can he properly seek an injunction to stop vaccines on behalf of other prisoners—while the evidence of malfeasance that he seeks might depend on that, each prisoner must make his own decision about whether to be vaccinated. King cannot do that for them. Finally, now that he is no longer at MSP, whatever is happening there is irrelevant to his current health situation. King fails to state a claim regarding MSP's COVID-19 response.

D.  Disciplinary hearing

King's final allegation relates to a disciplinary hearing that was held after an incident that occurred the first time he was confronted with having to go through the new scanner. On January 20, 2021, King was on his way to work when he was directed to go through the scanner. King expressed his concerns over the use of the

scanner and asked if a strip search was a satisfactory alternative. (Doc. 2-1 at 4.)
The officer in charge, Neubauer, said he did not know and called the command
post, which resulted in the appearance of Lt. Postma. Despite what King asserts
was initially a respectful exchange, Postma ranted and raved and claimed King had
refused an order and directed Neubauer to write King up. He may also have told
King's employer to fire him. King's initial Complaint requested no action related
to this incident.

King's Addendum includes information related to the eventual disciplinary
hearing. It appears that the disciplinary hearing gives rise to King's decision to add
Walsted as a defendant to this case. Walsted was the hearing officer at the hearing,
which occurred on January 27, 2021. (Doc. 5 at 11.) According to King, Walsted
did not give him a fair hearing, and there was no evidence, other than lies, to
support the allegations of the write up. (King has attached the hearing decision to
this document. The scanning is of such poor quality that it is impossible to read
anything on it. Doc. 5-1 at 1.) King seeks to overturn the result of this disciplinary
hearing, (Doc. 5 at 11), but he is not clear what those results are, other than to
conclude that he has missed out on "pay and privileges" and will likely suffer
adversely for parole eligibility. (Doc. 5 at 14.) He asserts that Postma and
Neubauer lied about him refusing to use the scan, and therefore the disciplinary
hearing based on their testimony was unconstitutional.

King does not contend that he has exhausted his prison remedies regarding this discipline, as he is required to do before bringing any claim related to his confinement to court. Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under … [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prisoners must exhaust their administrative remedies prior to filing suit, not during the pendency of the suit, as King appears to be attempting here. *See McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam). King does not assert that he appealed the disciplinary decision, but if he is currently doing so, it is still too late for this litigation. Because he has failed to exhaust his administrative remedies, King's claim related to his disciplinary hearing is barred by the PLRA.

Accordingly, the Court issues the following:

**ORDER**

1.  King's Motion to Proceed in Forma Pauperis (Doc. 1) is GRANTED.

2.  The Clerk shall edit the text of the docket entry for the Complaint (Doc. 2) to remove the word "LODGED" and file the Complaint as of January 27, 2021.

3.  This matter is DISMISSED without prejudice.

4.  The Clerk of Court is directed to close this matter and enter judgment

pursuant to Rule 58 of the Federal Rules of Civil Procedure.

DATED this 25th day of May, 2021.

_____
Brian Morris, Chief District Judge
United States District Court